# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

*David E. Patton*
Executive Director
and Attorney-in-Chief

*Appeals Bureau*
*Barry D. Leiwant*
Attorney-in-Charge

October 21, 2021

**BY ECF**
Honorable Laura Taylor Swain
Chief United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**MEMO ENDORSED**

    Re:    *United States v. Gerald Scott*
             No. 06-cr-988

Dear Chief Judge Swain:

      We write to request that Gerald Scott's surrender date, which is currently October 28th, be extended until November 29th.

      Mr. Scott has been at liberty since January 5, 2018, when Your Honor released him after a thorough review of the facts and Mr. Scott's 11 years in prison. *See* Exhibit A. Since then, he has been in full compliance with the terms of his supervised release and has managed, during a global pandemic and despite mental health challenges, to secure housing and a full-time job.

      The prospect of his actually returning to jail surfaced only this past March – more than three years after his release – when a divided en banc Court of Appeals for the Second Circuit reversed the rulings of both Your Honor and a 3-judge circuit panel. Mr. Scott, despite having 150 days under the Supreme Court's COVID-19 rules to seek review of the en banc ruling, filed his petition for a writ of certiorari the same month the en banc decision was issued. The government then obtained four month-long extensions to respond to Mr. Scott's petition. When it filed its response, it acknowledged the existence of a circuit split on the legal question at issue but opposed certiorari nonetheless. This week, the Supreme Court declined review. *See* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-7778.html.

      Mr. Scott now has two options. First, he can seek Supreme Court rehearing by Friday November 12th if another circuit weighs in on the split or something else happens that would warrant reconsideration. *See* Sup. Ct. R. 44.2. Second, if no such thing happens, Mr. Scott will move this Court on November 15th for a sentence reduction to time served pursuant to 18 U.S.C. § 3582(c)(1)(A). In the short meantime, there is abundant good cause for a stay.

To begin, Mr. Scott has been at liberty for nearly four years without incident. In fact, "without incident" is a gross understatement: he has achieved remarkable things. Living at first with his sister, with whom he's very close, he eventually moved out of her apartment and into shelter housing because he wanted to succeed on his own. He got a job with Cosmos Communications in Long Island City and worked there roughly a year, losing his job only when the COVID-19 pandemic struck. Jobless, he took long walks to avoid the cacophony of his severely disturbed shelter roommate and pursued enrollment in a city rental assistance program. He succeeded, and in April 2021 he moved into his own apartment on Wyckoff Avenue in Brooklyn. Our office almost never sees our clients overcome all the bureaucratic hurdles standing in the way of this. Equally rare is a client like Mr. Scott obtaining housing on his own: landlords hardly jump at the chance to rent to people with serious criminal records. After settling into his new place – an accomplishment that conferred previously-unknown calm and security – Mr. Scott got a position in the Facilities and Operations Department of West Elm's corporate headquarters in Brooklyn, where he works five days a week and earns $17 an hour. These and other facts will be detailed in his § 3582 motion. The point for now is that his exceptional conduct since his release confirms, among other things, he is no danger to anyone.

Consequently, the government has identified no reason for Mr. Scott to report to prison next week. It consented to his release throughout the eight months since the en banc ruling, *see* Docket Entries 107, 111, 113, and we hoped it would consent to the one-month extension we seek here. But it did not, and it gave us no reason for its opposition— as no good one exists. After nearly four years of freedom, and eight months of extensions, one more short stay will do no harm. By contrast, Mr. Scott would suffer irreparably if imprisoned and thereby stripped of his home and job, which took such effort to secure, prior to his § 3582 motion being granted.

And that § 3582 motion stands a good chance of being granted.

First, the en banc decision is no impediment to granting relief under § 3582. Your Honor released Mr. Scott after ruling he was not subject to the 15-year minimum mandated by the Armed Career Criminal Act ("ACCA") on the ground that New York manslaughter is not a "violent felony" under ACCA. *See* Docket Entry 82. It was that legal ruling that the government appealed: it did not appeal Your Honor's determination that Mr. Scott's 11 years in prison, for his foiled robbery attempt that hurt no one, was punishment "sufficient but not greater than necessary to comply with [§ 3553(a)'s] sentencing purposes." Exhibit A at 39. The en banc circuit, after reversing Your Honor's and the panel's legal ruling that New York manslaughter is not a "violent felony," directed Your Honor to "reinstate Scott's original sentence." *United States v. Scott*, 990 F.3d 94, 101 (2d Cir. 2021) (en banc). Your Honor must do that, of course, and may then, if Your Honor agrees with the arguments in Mr. Scott's § 3582 motion, reduce his sentence to time served. Whether New York manslaughter is a "violent felony" has nothing to do with whether "extraordinary and compelling reasons warrant [] a reduction" of Mr. Scott's sentence to time served. § 3582(c)(1)(A)(i). The en banc court never considered that question, and thus its ruling on the ACCA issue poses no bar to granting § 3582 relief.

Second, Mr. Scott has already "exhausted [his] administrative rights," § 3582(c)(1)(A), by requesting, to no avail, a sentence reduction from the wardens of the last two Bureau of Prisons ("BOP") facilities that housed him: the Metropolitan Detention Center in Brooklyn

2

("MDC") and the Federal Correctional Institution in Fort Dix, New Jersey.  *See* Exhibit B. MDC responded by saying Fort Dix is the prison that has his file, *see* Exhibit C, and Fort Dix responded by saying Mr. Scott "is not housed at FCI Fort Dix."  Exhibit D.  This reflects BOP policy in these cases: "BOP maintains it does not have the power to grant a sentence reduction to a defendant not in its custody."  *United States v. Thrower*, 495 F. Supp. 3d 132, 141 (E.D.N.Y. 2020).  Thus, courts are in lockstep that in the unusual situation here – where a defendant serves time, is released, but years later has that release jeopardized by a successful government appeal on a legal point – courts may grant a § 3582 motion without first requiring the defendant to return to jail and there present his motion to the warden.  That was the holding in *United States v. Austin*, 468 F. Supp. 3d 641 (S.D.N.Y. 2020), where the defendant had "served approximately eleven years" in prison, was "released [] from custody" after a ruling that New York robbery is not a "violent felony" but then, "two-and-a-half years" later, faced possible reimprisonment after a successful government appeal on the "violent felony" issue.  *Id*. at 642-43.  As Judge Rakoff explained, requiring the defendant to go to jail to present his motion, and thus "suffer[] the severe and irreversible disruption that a return to prison would cause," would "be a hypertechnical and inequitable result, more akin to a seventeenth-century battle of writs than to the mandate of modern law to render substantial justice."  *Id*. at 644.  Judge Ross agreed in *Thrower*, not requiring the defendant there, who had "served 149 months in prison" and been "at liberty for nearly two years," to return to jail to present his motion.  495 F. Supp. 3d at 135, 142.  Section 3582 "encompass[es] defendants who are not technically in custody but face unusual circumstances such that excluding them from seeking sentence reductions would be 'hypertechnical,' 'inequitable,' and contrary to the [statute's] purpose.  That same logic applies here and in *Austin*."  *Id*. at 140 (citation omitted).  Likewise, Judge Oetken ruled that a defendant who had served "over 12 years" and "been at liberty for more than three years" did not have to go back to jail to present his motion.  *United States v. Buie*, 2020 WL 7490106, at *1-*2 (S.D.N.Y. 2020).  He specifically noted, as "*the Government no longer disputes*, that Buie has satisfied the exhaustion requirement" by "submit[ing] a request for [] release in February 2020 to the warden" despite not being in custody.  *Id*. at *2 n.1 (emphasis added).  "It would make little practical sense, and would not serve the interests of justice, to order Buie returned to prison."  *Id*.  Thus, and as even the government acknowledges, a defendant in Mr. Scott's position need not return to jail to petition the warden.  He need only present his request, and this Court may grant § 3582 relief "30 days from the receipt of such a request by the warden."  § 3582(c)(1)(A).  Both BOP facilities that Mr. Scott petitioned received his request by October 20th, *see* Exhibits C-D, meaning Your Honor may grant § 3582 relief after November 19th.

Third, "extraordinary and compelling reasons warrant [] a reduction" of Mr. Scott's sentence to time served.  § 3582(c)(1)(A)(i).  Under the statute, courts may "consider *any* extraordinary and compelling reason for release that a defendant might raise" other than "'[r]ehabilitation . . . *alone*.'"  *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020) (emphasis in original; citation omitted).  As outlined above, Mr. Scott's rehabilitation has been exceptional.  "But beyond his demonstrated rehabilitation, [his] situation itself also constitutes an extraordinary circumstance that counsels in favor of release.  [He] has been out of prison for [nearly four] years and, during that time, has lived his life as a free man.  Returning him to custody could only undermine this progress.  Most immediately, even a short period of incarceration would likely cause [him] to lose his affordable-housing apartment, an irrational outcome totally at odds with the purposes that the criminal law seeks to serve."  *Austin*, 468 F.

3

Supp. 3d at 645.  Indeed, despite living in a shelter and losing his job to the pandemic, Mr. Scott maintained his mental health, worked long and hard to move into his own apartment, and held a number of custodial jobs before securing the full time, well-paid position at West Elm. "[R]eincarcerating him would erase all the steps he has made.  And these steps have been meaningful to him, as he has spent much of his adult life cycling through the criminal legal system. . . .  Accordingly, this factor holds significant weight in determining whether extraordinary and compelling reasons exist." *Thrower*, 495 F. Supp. 3d at 142.  In addition, the legal trajectory of Mr. Scott's case has been highly unusual.  Most litigants do not prevail in district court, and before a 3-judge appellate panel, only to have their victory undone by a divided en banc court.  And an even smaller number of them spend the years of their case living in fear of being sent back to prison.  That is no easy stress to handle, yet Mr. Scott has done it with grace.  Sending him back to jail would destroy everything he's achieved (if not him)— and for nothing.  That's because, as Your Honor determined in January 2018 and the government did not contest on appeal, a sentence of the 11 years Mr. Scott served for his attempted robbery is "sufficient but not greater than necessary to comply with [§ 3553(a)'s] sentencing purposes." Exhibit A at 39.  Mr. Scott's conduct these past several years confirms beyond any doubt the wisdom of that judgment.

Thus, and finally, a sentence of time served is fully consistent with "the factors set forth in section 3553(a)." § 3582(c)(1)(A). As Your Honor explained in January 2018, Mr. Scott "had been working hard over the last 11 years to overcome his addiction and mental health problems and to reestablish his ties with his family." Exhibit A at 40. "He has completed numerous educational programs and maintained a record without serious adverse incidents while in BOP custody." *Id*. at 40-41. "I believe that his remorse is sincere and his letters indicate insight and positive realistic future goals." *Id*. at 41. "Mr. Scott exhibits significant changes in thinking, attitude and behavior" from the young and drug-addicted man who committed violent crimes many years earlier. *Id*. It is "significant that Mr. Scott has demonstrated genuine remorse for his choices and acknowledges the pain that his actions have caused the victims of the robbery and his family and that he has been himself made even more acutely aware of the loss of time caused by his choices through the loss of several family members including his father while he has been incarcerated." *Id*. "He demonstrates that he understands his actions deprived him of a normal life and he made the commendable decision to spend his time within the Bureau of Prisons in a productive way." *Id*. at 41-42. "His reflections now are made with the benefit of several years of sobriety and mental health treatment." *Id*. at 42. "So having considered all of these factors including the nature and seriousness of the crimes, Mr. Scott's own criminal history, his personal characteristics and his work over the last 11 years to overcome serious issues in his life," the Court imposed a "time-served" sentence. *Id*. After doing so, Your Honor said, "I would like to say a few more words to Mr. Scott and his family." *Id*. at 46. "This has been a long road.  Not as long a road as it could have been and that is a very good thing.  You have shown in the 11 years that you served that you do want to be a different person and you want to live as a different person." *Id*. at 46-47. "Given the way that you have lived over the last 11 years and given what you told me about yourself and what you want to do, given the support that you have of your family and the careful planning that you have done with the social worker and the work that you will be doing with probation, I know that you can succeed." *Id*. at 47. "I thank you all for listening. I also thank counsel for their work, for their thoughtful advocacy on these difficult legal issues and on the fundamental question of justice here.  So thank you for helping me reach

4

the right decision." *Id*. at 49.

Releasing Mr. Scott was indeed "the right decision"— which his conduct these past years confirms in spades. "Since his release in 201[8], [Mr. Scott] has lived the life of a productive citizen, securing employment, obtaining an apartment, and involving himself with his family. He is in no need of specific deterrence, and it is evident that the other purposes of his original sentence (such as general deterrence) have been fully achieved by his substantial period of imprisonment." *Austin*, 468 F. Supp. 3d at 645.  Here, as in *Austin*, "further incarceration of this defendant could serve no conceivable purpose." *Id.  See also Thrower*, 495 F. Supp. 3d at 143 ("Mr. Thrower now is fifty-six years old and has little incentive to risk going back to jail.  I decline to send him there."); *Buie*, 2020 WL 7490106, at *2 (The "Court does not believe that any additional incarceration is needed to serve the purposes of specific deterrence or protecting the public.  And the Court concludes that the time Buie has already served is fully adequate to comply with the statutory purposes of providing just punishment, promoting respect for the law, reflecting the seriousness of the offense, and affording general deterrence to criminal conduct.").

The answer to "the fundamental question of justice here," Exhibit A at 49, is to "reinstate Scott's original sentence," *Scott*, 990 F.3d at 101, and then "reduce the term of imprisonment" to time served pursuant to § 3582(c)(1)(A).  Before that can happen, however, Mr. Scott must file a § 3582 motion if no grounds for Supreme Court reconsideration arise by November 12th.  As there is no good reason for Mr. Scott to go to jail in the meantime, and ample "good cause to further postpone his surrender date," *United States v. Javed*, 2021 WL 2181174, at *5 (S.D.N.Y. 2021), we ask Your Honor for a short continuance of that date to November 29th.

Respectfully submitted,

s/ Matthew B. Larsen
s/ Jennifer E. Willis
Assistant Federal Defenders

cc:    AUSA Catherine Ghosh

The application is granted for the reasons described above. Mr. Scott's surrender date is extended to November 29, 2021. Docket entry no. 115 is resolved. SO ORDERED.
10/25/2021
/s/ Laura Taylor Swain, Chief USDJ