UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

    -v-                                                                                             No. 06-CR-988-LTS-1

GERALD SCOTT,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

The Court has received Defendant Gerald Scott's motion for a reduction in sentence pursuant to 18 U.S.C. section 3582(c)(1)(A). (Docket entry no. 117 ("Motion").) For the following reasons, Mr. Scott's motion is granted, and his sentence is reduced to time served, followed by two years of supervised release.

## BACKGROUND

In October 2007, upon pleading guilty, Mr. Scott was convicted of the following three crimes stemming from a jewelry store robbery: armed robbery (in violation of 18 U.S.C. section 1951); brandishing a firearm in relation to an armed robbery (in violation of 18 U.S.C. sections 924(c)(1)(A)(ii) and (2)); and unlawful possession of a firearm after having been previously convicted of three violent felonies (in violation of 18 U.S.C. sections 922(g)(1) and 924(e)). (Docket entry no. 41.) His firearm possession conviction (the "ACCA Conviction") was imposed pursuant to the Armed Career Criminal Act, a sentence-enhancing statute which provides that, when a defendant has three or more prior convictions for a "violent felony," the mandatory minimum prison sentence is 15 years. See 18 U.S.C. § 924(e). This Act applied in sentencing Mr. Scott based on three of his prior felony convictions under New York state law—

two of first-degree manslaughter (incurred in 1988), and one of first-degree robbery (incurred in 1983). (Docket entry no. 75.) In April 2008, the Court sentenced Mr. Scott to a 151-month term of imprisonment for his federal armed robbery conviction, paired with a concurrent term of 180 months for his ACCA Conviction, to be followed by a mandatory consecutive term of 84 months for his brandishing a firearm conviction—resulting in a total custodial sentence of 264 months. (Docket entry nos. 41, 79.)

In December 2016, after serving approximately 11 years of his prison sentence, Mr. Scott filed a motion to vacate his sentence pursuant to 18 U.S.C. section 2255, arguing that Johnson v. United States, 576 U.S. 591 (2015), a newly-issued Supreme Court decision, had rendered the Armed Career Criminal Act ("ACCA") inapplicable to his case. (Docket entry nos. 65, 75.) Mr. Scott argued that, under Johnson[1], his prior state convictions for manslaughter no longer counted as violent felonies. This Court granted his motion, issuing an order on June 2, 2017, which concluded that a New York manslaughter conviction was not necessarily a "violent felony" because the state manslaughter statute could be violated by inaction or omission. (Docket entry no. 82.) Accordingly, the Court concluded that Mr. Scott "lack[ed] the necessary predicate convictions for violent felonies to trigger the ACCA's 180-month mandatory minimum sentence following the Johnson decision," and granted him a resentencing hearing. (Docket entry no. 82, at 5.)

---

[1]     In Johnson, the Supreme Court held that a portion of the ACCA was "unconstitutionally vague." Johnson, 576 U.S. at 597. The ACCA contains several different definitions of the term "violent felony," including defining a "violent felony" as a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. at 594. The Supreme Court concluded that this specific definition (also known as the "residual clause") was unconstitutionally vague because it left uncertainty about "how much risk it takes for a crime to qualify as a violent felony." Id. at 598.

The resentencing hearing occurred on January 5, 2018.  (Docket entry no. 101 ("Sentc. Tr.").)  At the resentencing, the Court calculated the new applicable Sentencing Guidelines custodial range to be 121 to 130 months, and noted that Mr. Scott had at that point already served 134 months of imprisonment.  (Id. at 39.)  After hearing thorough arguments from both parties and addressing the relevant 3553(a) sentencing factors, the Court sentenced Mr. Scott to time served, followed by five years of supervised release.  (Id. at 42.)  Mr. Scott has since been at liberty.

The Government appealed to the Second Circuit, contending that the New York manslaughter statute was, in fact, a proper predicate for an ACCA conviction.  The Second Circuit issued a panel decision on March 31, 2020, affirming this Court's ruling and holding that "New York first-degree manslaughter is not a crime of violence under the force clause of [the] ACCA because it can be committed by inaction."  United States v. Scott, 954 F.3d 74, 87 (2d Cir. 2020), opinion vacated on reh'g en banc, 990 F.3d 94 (2d Cir. 2021), cert. denied, 142 S. Ct. 397 (2021).  The Government sought, and the Second Circuit granted, rehearing of the case en banc.  (Order for Rehearing, United States v. Scott, No. 18-163 (2d Cir. July 10, 2020), ECF no. 128.)  The Second Circuit issued its en banc decision on March 2, 2021, reversing this Court's decision after holding that "New York first-degree manslaughter [is] a categorically violent crime under the force clauses of the ACCA and the Career Offender Guideline."  United States v. Scott, 990 F.3d 94, 101 (2d Cir. 2021), cert. denied, 142 S. Ct. 397 (2021).  The case was remanded to this Court with "directions to reinstate Scott's original sentence and judgment."  Id. at 125.

In accord with the Second Circuit's mandate, this Court reinstated Mr. Scott's original sentence on March 30, 2021, and ordered him to surrender to the designated institution

to begin his sentence—which would require him to serve approximately 10 further years in prison. (Docket entry no. 108.) Mr. Scott thereafter informed the Court of his intention to petition the U.S. Supreme Court for a writ of certiorari, and requested a postponement of his surrender date. (Docket entry no. 109.) The Court granted the postponement request, and granted several additional postponements of his surrender date while the certiorari petition was pending. (See docket entry nos. 110, 112, 114, 116, 119.) The Supreme Court declined review of Mr. Scott's case on October 18, 2021. Scott v. United States, 142 S. Ct. 397 (2021). Mr. Scott's surrender date is currently December 20, 2021. (Docket entry no. 120.)

On November 15, 2021, Mr. Scott filed the instant motion for reduction of sentence, requesting that his sentence be reduced to time served. (Motion at 1-3.) His motion is accompanied by nine letters of support from his family, friends, and colleagues, as well as a letter from Mr. Scott himself. (Motion at 87-110.) On December 6, 2021, the Government filed its response in opposition (docket entry no. 123 ("Opp.")), and on December 13, 2021, Mr. Scott filed his reply. (Docket entry no. 124 ("Reply").)

## DISCUSSION

Mr. Scott moves for a reduction of his sentence pursuant to 18 U.S.C. section 3582(c)(1)(A) which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 117-57).  The Court therefore considers "the factors set forth in section 3553(a) to the extent that they are applicable," and then considers, in light of those factors, whether the defendant's proffered "extraordinary and compelling reasons" for a sentence reduction warrant such a reduction.  The sentencing factors set forth in 18 U.S.C. section 3553(a) are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . established [by the Sentencing Guidelines] …; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is sentenced] …; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553(a) (Westlaw through P.L. 117-57).

The Court may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release" in determining whether those reasons warrant a sentence reduction.  United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).  "The defendant has the burden to show he is entitled to a sentence reduction" under section 3582(c)(1)(A).  United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. Jan. 8, 2020).

Mr. Scott raises two primary arguments in his motion, contending that his sentence should be reduced to time served due to: (1) the unique factual and procedural history of his case; and (2) the extensive rehabilitation he has undergone, both during his 11 years in

prison and during the past four years he spent at liberty. The Government opposes the motion, contending that rehabilitation alone is insufficient to merit compassionate release, and that the subsequent appellate litigation does not render this case extraordinary or compelling. The Court is persuaded that Mr. Scott has demonstrated extraordinary and compelling reasons warranting his release and, for the following reasons, grants his motion.

The Court first considers whether Mr. Scott is eligible to petition this Court for compassionate release, given that he is not currently in the custody of the Bureau of Prisons ("BOP"). Although the compassionate release statute seems implicitly to presume that a defendant seeking compassionate release will be in BOP custody, see 18 U.S.C. § 3582(c)(1)(A) (stating that a request for release must be brought to "the warden of the defendant's facility"), the statute does not expressly require such custodial status—"the only absolute requirement is that a defendant be subject to a federal sentence." United States v. Austin, 468 F. Supp. 3d 641, 643 (S.D.N.Y. Jun. 22, 2020). Thus, in certain narrow and limited circumstances, district courts in this circuit have recognized that a defendant need not be in BOP custody to petition for compassionate release. Id. This exception has been recognized "where the defendant served most of his sentence, was released after the district court vacated the rest of it, and faced reincarceration after that decision was reversed" on appeal. United States v. Thrower, 495 F. Supp. 3d 132, 140 (E.D.N.Y. Oct. 19, 2020); see also United States v. Buie, No. 05-CR-664-JPO, 2020 WL 7490106, at *2 (S.D.N.Y. Dec. 21, 2020) (agreeing that an at-liberty defendant is eligible for compassionate release for the reasons explained in Austin). For the reasons set forth

in Austin, Thrower, and Buie, this Court concludes that Mr. Scott is eligible to petition for compassionate release.[2]  The Government makes no argument to the contrary.

The Court next turns to the section 3553(a) factors, which were most recently applied at the time of Mr. Scott's resentencing on January 5, 2018.  As for the nature and circumstances of the offense, the Court recognized that this was a serious offense in which Mr. Scott and one other individual robbed a jewelry store at gunpoint.  (Sentc. Tr. at 40.)  Although no one was hurt during the robbery, it was nonetheless an offense meriting "serious punishment and deterrence."  (Id.)  As for Mr. Scott's personal history and characteristics, the Court noted that he had a "difficult and troubled childhood" and a "history of mental illness and drug addiction which were left untreated for many years," and that he had accumulated a "history of violent offenses" during his youth.  (Id. at 40-41.)  However, the Court noted that these past offenses had been committed over 30 years ago, while Mr. Scott was using drugs, and that, at 52 years old, Mr. Scott was exhibiting "significant changes in thinking, attitude, and behavior."  (Id. at 41.)

The Court further noted that, during the 11 years Mr. Scott had spent incarcerated, he had been "working hard . . . to overcome his addiction and mental health problems and to reestablish his ties with his family," to great success.  (Id. at 40.)  He had completed numerous educational programs while incarcerated and had not incurred any serious disciplinary incidents.  (Id.)  The Court credited Mr. Scott's expression of remorse as sincere and genuine, and observed

---

[2]  Mr. Scott also satisfied the statute's exhaustion requirement by submitting his request for a reduction in sentence on October 20, 2021, to the last two BOP facilities that housed him. (Motion at 84-85.)  See Buie, 2020 WL 7490106, at *2 n.1 (exhaustion requirement was satisfied because the defendant submitted his request to "the federal prison facility where he was last incarcerated, and more than 30 days have elapsed since that submission").

that his letters to the Court indicated insight into his past mistakes and "positive realistic future goals." (Id. at 41.) In considering the specific goals of sentencing, the Court took into account Mr. Scott's significant rehabilitation, his genuine remorse and self-awareness, and his stated intentions to lead a clean, stable, crime-free life with his family upon his release. (Id. at 41-42.) In light of these considerations and others stated on the record, the Court imposed a sentence of time served (i.e., 134 months) followed by five years of supervised release, which represented a sentence slightly higher than the then-applicable Sentencing Guidelines range of 121 to 130 months. (Id. at 42.)

In the four years since Mr. Scott's resentencing and release, there have been several new developments relevant to the section 3553(a) factors—all of which have served to confirm this Court's assessment that Mr. Scott will live his life as a responsible, law-abiding individual who contributes positively to society. Mr. Scott was able to secure his own affordable-housing apartment (after spending nearly three years in a shelter), he has stayed sober, he has obtained a reliable full-time job as a warehouse clerk, he has abided by all terms of supervised release, and he has strengthened his ties to his family and community. His employers and colleagues describe him as "an upstanding citizen" who is "reliable, honest, and hardworking" and "gives 100% all the time." His dedication is also evident in his family life—his niece describes him as a "friend, father figure, counselor, and support system" for herself and her three young children. The letters submitted on his behalf demonstrate that he is a changed person since his release, becoming a tremendous source of support for his family and having a positive impact on many people in his life. Mr. Scott's own letter shows that he continues to feel genuine remorse for his past crimes and that he is committed to living a peaceful, productive life in service of others. He has demonstrated that he no longer poses a risk to public safety.

Another consideration indicative of the presence of extraordinary and compelling circumstances and the sufficiency of a time served sentence to satisfy the section 3553(a) factors is Mr. Scott's age.  Mr. Scott is now 56 years old—an age which not only significantly reduces his statistical likelihood of recidivism, but also puts him at a higher risk for serious illness from COVID-19.  The unusual procedural history of Mr. Scott's case is also notable and compelling.  Ordering Mr. Scott to return to prison now, after his four years of freedom and successful re-integration into society, would be unjust under the circumstances presented here—re-incarceration would cause him to lose his housing, his job, and his family support, and would see him return him to prison at a time when BOP facilities already face overcrowding and lack of resources due to the pandemic.  The 11 years of incarceration that Mr. Scott has already served are sufficient to promote deterrence, administer just punishment, and ensure ongoing protection of the public.  Nonetheless, in order to ensure that Mr. Scott continues to receive adequate re-entry support, and to satisfy the Government's concerns regarding fair and just punishment, the Court concludes that an additional short term of supervised release is merited.

Accordingly, having considered all of the facts presented, the section 3553(a) factors, the provisions of the relevant statutes, and the parties' arguments, the Court concludes that Mr. Scott has demonstrated extraordinary and compelling reasons for a reduction of his sentence.

## Conclusion

For the reasons set forth above, Mr. Scott's motion for compassionate release pursuant to 18 U.S.C. section 3582(c)(1)(A) is granted.  Mr. Scott's custodial sentence is hereby reduced to time served on each of his three remaining counts of conviction, to be followed by

two years of supervised release on each count, running concurrently. His supervised release shall be subject to all of the conditions that were previously imposed at the January 5, 2018, resentencing, including all standard, mandatory, and special conditions. (See docket entry no. 100, at 3-5.) The Court will also enter an Order on Motion for Sentence Reduction Under 18 U.S.C. section 3582(c)(1)(A), confirming that the Motion has been granted. Docket entry no. 117 is resolved.

    SO ORDERED.

Dated: New York, New York
       December 17, 2021

    /s/ Laura Taylor Swain
    LAURA TAYLOR SWAIN
    Chief United States District Judge